## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CENTRAL MORTGAGE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2014-0096** |
| | ) | |
| **MICHAEL CHRISTOPHER POWERS** | ) | |
| **a/k/a MICHAEL C. POWERS,** | ) | |
| **CHRISTIE A. POWERS** | ) | |
| **a/k/a CHRISTIE POWERS, and** | ) | |
| **U.S. SMALL BUSINESS** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**Ryan C. Meade, Esq.,**
Miami, FL
    *For Plaintiff*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant U.S. Small*
    *Business Administration*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default and Summary Judgment" filed by Plaintiff, Central Mortgage Company ("Central Mortgage" or "Plaintiff") against Defendants Michael Christopher Powers a/k/a Michael C. Powers, Christie A. Powers a/k/a Christie Powers (the "Powers"), and the U.S. Small Business Administration ("SBA"). (Dkt. No. 32). For the reasons discussed below, the Court will grant Central Mortgage's Motion for Default and Summary Judgment.

# I.   BACKGROUND

On November 11, 2014, Central Mortgage filed a Complaint in this debt and foreclosure action against the Powers, the SBA, Unknown Tenant in Possession 1, and Unknown Tenant in Possession 2. (Dkt. No. 1).[1] In the Complaint, Central Mortgage asserted that the Powers are the owners of record to real property ("the Property") (*id.* ¶ 4), described as:

> Plot No. 54 (1.0273 US acre) and Plot No. 55 (0.7797 US acre) both of Estate Hermon Hill, Company Quarter, St. Croix, USVI.

(*Id.* ¶ 7). The Complaint alleges that, on March 2, 2010, the Powers, as "Tenants by Their Entireties," executed and delivered a Promissory Note (the "Note") in the amount of $590,000.00, together with interest at the annual rate of 5.250%, and a Mortgage (the "Mortgage") securing payment of said Note, to the "Payee named thereon." (*Id.,* ¶ 7; Dkt. Nos. 1-1, 1-2).[2] The Note and Mortgage were subsequently assigned to Central Mortgage, which owns and holds the Note and Mortgage and is entitled to enforce both documents as the holder of an instrument. (*Id.* ¶¶ 8-9).

The Complaint goes on to say that there was "a default under the terms of the Note and Mortgage for failure by the original mortgagor, the current property owner, or anyone on behalf of those liable on the Note and Mortgage to make the payment due on March 1, 2013 and all subsequent payments." (*Id.* ¶ 10). Central Mortgage elected to accelerate the loan, and the entire unpaid principal sum with unpaid accrued interest and late charges became immediately due and payable, amounting to $549,238.93, with interest continuing to accrue. (*Id.* ¶ 11). Plaintiff noted

---

[1] Central Mortgage voluntarily dismissed Defendants Unknown Tenant in Possession 1 and Unknown Tenant in Possession 2 on January 6, 2015 pursuant to Fed. R. Civ. P. 41(a)(1)(A). (Dkt. No. 13). It also dismissed the same parties—who had been mistakenly included—from the Amended Complaint on December 16, 2015. (Dkt. No. 31).

[2] Although not indicated in the Complaint, the Payee on the Note was Schaffer Mortgage Corporation. (Dkt. No. 1-1). The Mortgage was subsequently assigned from Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Schaeffer Mortgage Corporation, to Central Mortgage. (Dkt. No. 1-3).

that, during the pendency of the action, it may be required to pay property taxes, insurance premiums and similar charges with regard to the Property, which become part of the indebtedness for which it is entitled to be reimbursed from Defendants. (*Id.* ¶ 12). Central Mortgage also named SBA as a Defendant because SBA may have an interest in the Property by a mortgage dated February 18, 2009. (*Id.* ¶ 5).

Central Mortgage asked that judgment include all unpaid principal and interest due, plus interest accruing thereafter at the legal rate until judgment is satisfied; foreclosure of the Property and an order that it be sold in satisfaction of the Powers' indebtedness; a determination of the priority of liens; a deficiency judgment for any amount that may remain due on the judgment; and costs and fees incurred in collecting the debt. (*Id.* at 3-4).

Michael Christopher Powers and Christie A. Powers were both served on December 9, 2014 (Dkt. Nos. 7, 8), and SBA was served on December 12, 2014. (Dkt. No. 9). On January 6, 2015, Central Mortgage filed an application for entry of default against the Powers. (Dkt. No. 14). The Clerk of Court entered default against them on January 9, 2015. (Dkt. No. 15).

SBA filed an Answer on March 9, 2015. (Dkt. No. 18).

On June 15, 2015, Central Mortgage moved to amend its Complaint, stating that amendment was "necessary to reform the Mortgage at issue in this action based on mutual mistake of the parties." (Dkt. No. 24 at 1). Plaintiff explained that the Mortgage given by the Powers to Mortgage Electronic Registration Systems, Inc., ("MERS"), as nominee for Schaffer Mortgage Corporation, its successors and assigns, "failed to identify a second parcel, which was intended to be included in the mortgage given to MERS and later assigned to Plaintiff." (*Id.*) Central Mortgage stated that, when the Powers executed the March 2010 Mortgage, they had title to both Plot No. 54 of Estate Hermon Hill ("54 Hermon Hill") (1.0273 U.S. acres) and Plot No. 55 of Estate Hermon Hill ("55 Hermon Hill") (0.7797 U.S. acre), as set forth in the Warranty Deed. (*Id.* at 2)

(citing Warranty Deed, Dkt. No. 24-1). However, the legal description of the Property contained in the Mortgage described only 55 Hermon Hill:

> Plot No. 55 (0.7797 U.S. acre, more or less)
> of Estate Hermon Hill
> Company Quarter
> St. Croix, U.S. Virgin Islands
> As shown on OLG Drawing No. 4956-A dated October 26, 1994.

(*Id.*; Dkt. No. 1-2) According to Central Mortgage, by mutual mistake of the parties, the Mortgage failed to include 54 Hermon Hill, which the parties intended to be encumbered by the Mortgage. (*Id.* at 3) As a result, Central Mortgage moved to amend the Complaint to add a new count to reform the Mortgage. (*Id.*) The Court granted the motion to amend. (Dkt. No. 26).

Central Mortgage filed the Amended Complaint on September 11, 2015, which, *inter alia*, provided that it had discovered an error in the legal description of the Property contained in the Mortgage. (Dkt. No. 27). The Amended Complaint also sought reformation of the Mortgage to add the correct legal description of the Property, as follows, so that Plaintiff could convey good and marketable title at the conclusion of the foreclosure action:

> Plot Nos. 54 and 55 of Estate Hermon Hill
> Company Quarter
> St. Croix, U.S. Virgin Islands
> Shown on O.L.G. Drawing No. 4956-A
> Consisting of 1.0278 and 0.7797 U.S. Acres,
> Respectively, more or less.

(*Id.*, ¶¶15-17).

SBA filed an Answer to the Amended Complaint in which it, *inter alia*, asked that any Judgment in favor of Central Mortgage include a statement regarding priority of liens, and show that the lien of the United States was second in priority to the lien of Central Mortgage. (Dkt. No. 29).

On December 23, 2015, Central Mortgage filed the instant Motion for Default and Summary Judgment, where it sought default judgment against the Powers and summary judgment against SBA. (Dkt. No. 32). The Motion included a Memorandum of Law as well as an Affidavit of Indebtedness (Dkt. No. 32-5), a Declaration of Counsel (Dkt. No. 32-20), and supporting documentation.

In its Memorandum of Law, Central Mortgage asserts that it is entitled to reformation of the Mortgage because the failure to encumber 54 Hermon Hill was a mutual mistake of the parties. (Dkt No. 32 at 11). Central Mortgage points to the 2009 loan for $42,100.00 the Powers received from SBA, observing that as security for the loan, the Powers agreed to give SBA a lien over property located at 55 Hermon Hill. (*Id.* at 14). The property description in the SBA Mortgage encumbered both 54 and 55 Hermon Hill, although noting that the property was "[m]ore commonly known as 55 Hermon Hill." (Dkt. No. 32-8 at 1). Central Mortgage adds that:

> [t]he SBA subordinated its mortgage because it, too, understood the 2010 Mortgage would encumber both plots. The agreement was that the [2010] loan of $590,000 would be secured by both plots, 54 and 55 Estate Hermon Hill, because only the combined value of both plots would provide sufficient security for such a loan.

(Dkt. No. 32 at 14-15).

Moreover, according to Central Mortgage, when the Powers sought their second loan (the 2010 Note), the loan documents

> had both plots listed on documentation and conversely listed only plot number 55 Estate Hermon Hill, which was identified as the property address. See Exhibits 11, 12, 13, 14, 15, 16, 17. The appraisal that the 2010 loan of $590,000 was based on (in part) was the appraised value of both plots owned by the Powers. *See* Exhibit 11. The loan of $590,000 was possible because . . . the appraised value of both plots was $830,000. *Id.* Based on the loan application and ancillary loan documentation, the parties' intent was not accurately expressed in the 2010 Mortgage.

(*Id.* at 14).[3]

Based on the information contained in these documents, Central Mortgage argues that the parties intended that the 2010 Mortgage encumber both 54 and 55 Hermon Hill that had already been mortgaged to SBA, although the 2010 Mortgage, as written, does not reflect that intent. (*Id.*) Central Mortgage therefore requests that both the 2010 Mortgage, as well as the 2013 Assignment of Mortgage be reformed to include both plots, since the assignment can only assign the rights that the original mortgagee had. (*Id.* at 15).

With regard to the legal authority for reforming a mortgage, Central Mortgage quotes the Restatement (Second) of Contracts, § 155 (1981) ("§ 155" or "Restatement § 155"), which provides that a contract may be reformed if it fails to express an agreement because of a mistake of both parties as to the contents of the writing. (Dkt. No. 32 at 11). Plaintiff observes that the Virgin Islands Supreme Court has not issued a precedential opinion on mortgage reformation, and therefore the Court must analyze the three factors set forth in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), to determine if § 155 should be applied in the Virgin Islands: (1) which

---

[3] Exhibit 11 was the Appraisal, dated March 2, 2010. It appraised both Plots 54 and 55—a total of 1.807 +/- acres—for $830,000. The property address listed on the appraisal was 55 Estate Hermon Hill. (Dkt. No. 32-11). Exhibit 12 was the first of two Uniform Residential Loan Applications. It was completed by the Powers in December 2009, listed the property address as 55 Estate Hermon Hill, and sought a loan of $590,000. (Dkt. No. 32-12). Exhibit 13 was the Chicago Title Insurance Company Policy, in the amount of $590,000, dated March 8, 2010. It indicated that title to the estate was vested in the Powers as a result of the 2007 Warranty Deed, and described "the land referred to in this policy" as Plot No. 55 Estate Hermon Hill (Dkt. No. 32-13). Exhibit 14 was a Request for Verification of Rent or Mortgage. It described the Property's address as 54-55 Hermon Hill. (Dkt. No. 32-14). Exhibit 15 was a mandatory Flood Insurance Notification, which indicated the Property's address as 55 Estate Hermon Hill. (Dkt. No. 32-15). Exhibit 16 was a second Uniform Residential Loan Application, completed by the Powers in March 2010, which identified the Property address as 55 Estate Hermon Hill with a market value of $830,000 (Dkt. 32-16). Exhibit 17 was a "Notice to the Home Loan Applicant Credit Score Information Disclosure" form, dated December 9, 2009. It identified the Powers' address as both 54 and 55 Hermon Hill. (Dkt. No. 32-17).

common law rule have courts have applied in the past; (2) what is the rule of law adopted by the majority of courts of other jurisdictions; and, most importantly (3) which common law rule is the soundest for the Virgin Islands. (*Id.* at 11-12) (citing *Molloy v. Reyes*, 61 V.I. 163, 176 (2014)).

Central Mortgage contends that, in the few cases addressing reformation of a mortgage, Virgin Islands courts have adopted Restatement § 155. *See Bennington Foods, LLC v. St. Croix Renaissance Group LLLP,* 2010 WL 1608483, at *5 (D.V.I. Apr. 20, 2010); and *Whitfield v. Int'l Motors Corp.*, 24 V.I. 151, 161, 1989 WL 1739517, at *5-8 (V.I. Terr. Ct. Apr. 14, 1989). As to the second prong of the *Banks* analysis, Central Mortgage claims that "nearly every jurisdiction permits a mortgage contract to be reformed due to mutual mistake of the parties, particularly when the mistake occurs in the legal description of the property." (Dkt. No. 32 at 13, citing cases). As to the third prong of *Banks*, Plaintiff argues that "[f]ollowing the line of cases that permit reformation of a contract, mortgage or otherwise, would be beneficial to the Virgin Islands and using section 155 of the Restatement (Second) of Contracts as the basis for reforming a contract under such circumstances would be good law for the Virgin Islands." (*Id.* at 13-14).

Central Mortgage then contends that it is entitled to default judgment against the Powers, because the documents submitted show that: (1) the Powers executed the Note, promising to pay the principal amount of $590,000.00 to Schaffer, its predecessor-in-interest; (2) the Note was subsequently endorsed to holder, and Central Mortgage is the holder and is entitled to enforce the instrument; (3) as security for the Note, the Powers gave the Mortgage encumbering the real property they owned on St. Croix, which was later assigned to Central Mortgage; and (4) the Powers defaulted under the terms and conditions of the Note and Mortgage by failing to make the March 1, 2013 monthly payment and all subsequent payments. (Dkt. No. 32 at 15-16). Plaintiff also asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). (*Id.* at 17).

As to the amount of the indebtedness due under the loan documents, Central Mortgage cites the Affidavit of Indebtedness attached to its Motion for Default Judgment, signed by Kyle R. Loukota, an Assistant Vice President of Central Mortgage. (Dkt. No. 32-5). Mr. Loukota explained that Central Mortgage maintains records for the loan in its capacity as the lender, and he is familiar with the types of records maintained in connection with the loan; that the information provided in his affidavit is taken from Central Mortgage's business records; and that he has personal knowledge of how Plaintiff creates those records and has reviewed those records. (*Id.*, ¶¶ 1-4). He avers that the Powers executed and delivered the Note to the payee; the Note was secured by a March 2010 Mortgage on the Property, which was assigned to Central Mortgage in September 2013; Central Mortgage owns the Note and Mortgage; and the Powers defaulted on those instruments by failing to make the payment due on March 1, 2013 and all subsequent payments. (*Id.* ¶¶ 4-7). The Affidavit sets forth the amounts due and owing through December 17, 2015: $549,238.93 in unpaid principal balance; interest from February 1, 2013 through December 17, 2015 of $82,950.00; late charges of $1,791.90; tax payments of $10,040.18; hazard insurance payments of $18,448.56; and property inspection and preservation fees of $2,480.50. An escrow balance of $1,534.10 is also indicated on the account. Accordingly, the total amount due to Central Mortgage is $663,415.97. (*Id.* ¶ 8). Mr. Loukota asserted that interest accrues on the principal at the per diem rate of $79.00. (*Id.*) He stated that Central Mortgage has retained the law firm of Quintairos, Prieto, Wood & Boyer, P.A. to prosecute the foreclosure action, and that the firm would submit its request for attorney's fees and costs in another filing. (*Id.* ¶ 9).

Also in support of its motion, Central Mortgage filed a Declaration of its then counsel, Johanna Harrington, Esq., who averred that, although the Powers were served, they failed to respond to the Summons and Complaint; a search of the Department of Defense's Manpower Database revealed that the Powers have never been on active duty with the U.S. Armed Forces, in

compliance with the Servicemembers' Civil Relief Act, as shown by the Status Reports attached to the motion (Dkt. Nos. 32-18, 32-19); based on the dates of birth for the Powers, they are adults over the age of eighteen; and, upon information and belief, the Powers are each competent in that they were both employed and previously owned and operated their own business. (Dkt. No. 32-20).

In addition, Central Mortgage argues that it is entitled to summary judgment against Defendant SBA because SBA subordinated its mortgage to Plaintiff's predecessor-in-interest. (Dkt. No. 32 at 17, citing Dkt. No. 32-10). Although the Virgin Islands is a race notice jurisdiction, Central Mortgage points out that a lienholder with first priority may agree to give up its position—which occurred here. (*Id.* at 17-18)

Central Mortgage concludes that, if the Court agrees to reform its Mortgage to include 54 Hermon Hill as property encumbered by the 2010 Mortgage, it has a superior mortgage as to both plots encumbered by the SBA Mortgage. If the Court denies its reformation request, Central Mortgage would have a superior lien only as to Plot No. 55 Hermon Hill; SBA would have a superior lien as to Plot 54 Hermon Hill; and Central Mortgage would have no lien against Plot No. 54 Hermon Hill. (*Id.* at 18).

SBA filed a Response to Central Mortgage's Motion for Summary Judgment, stating that it did not oppose the motion or challenge any fact for which Plaintiff alleged there was no genuine dispute. (Dkt. No. 33). SBA agreed with Central Mortgage that "reformation of the mortgage is appropriate under the specific facts of this case to properly reflect the proper description of the property being foreclosed"—*i.e,* Plots 54 and 55 Estate Hermon Hill. (*Id.* at 1). SBA further agreed that it was a junior lienholder in this action by virtue of the subordination agreement it executed on February 4, 2010 in favor of Central Mortgage's predecessor-in-interest. SBA added that, pursuant to 28 U.S.C. § 2410(c), it was entitled as a junior lienholder to redeem the property within

one year from the date of sale, and requested that any language in the judgment of foreclosure reflect its statutory right of redemption. (*Id.* at 2).

Finally, SBA notes that the proposed judgment filed by Central Mortgage failed to include language that authorized disbursement of any surplus remaining after application of the proceeds of sale to costs, expenses, and Central Mortgage's debt to any junior lienholder as authorized by 28 V.I.C. § 533. (*Id.*) Consequently, SBA provided an affidavit of indebtedness as of January 12, 2016, showing that the Powers' indebtedness on the SBA mortgage is $13,182.34, with interest continuing to accrue at $1.38 per day. (*Id.*)

The Affidavit of Indebtedness filed by SBA was executed by Loan Specialist Paul Bottalico, who averred that he is a custodian of SBA records regarding the instant debt; the records were kept by SBA in the course of business; and he was authorized to execute the Affidavit of Indebtedness on behalf of the SBA. (Dkt. No. 33-1). Mr. Bottalico stated that the SBA Note was secured by "real property located at 55 Hermon Hill," evidenced by a Mortgage dated February 18, 2009 and, as of January 12, 2016 the following sums were due: principal of $12,619.26 and interest of $563.08, totaling $13,182.34. (*Id.*)

## II.   APPLICABLE LEGAL PRINCIPLES

### A.  Default Judgment

In a motion for default judgment, "a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. . . . Rather, the plaintiff must prove that he is entitled to the damages sought." *Polidoro v. Saluti*, __ F. App'x __, 2017 WL 90348, at *1 (3d Cir. Jan. 10, 2017) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*United States v. Woods,* 2016 WL 6471448, at *6 (D.V.I. Oct. 31, 2016) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 55(b). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

### B. Summary Judgment

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, on the uncontroverted facts, it is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195 n.1 (3d Cir. 2015). The moving party bears the initial burden of demonstrating the absence

of a genuine dispute of material fact. *Goldenstein v. Repossessors Inc.,* 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or . . . vague statements." *Patterson v. Glory Foods, Inc.*, 555 F. App'x 207, 211 (3d Cir. 2014) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (internal quotation marks omitted; alteration in original)); *see also* FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, "[a]ll facts are viewed in the light most favorable to the non-moving party, who is 'entitled to every reasonable inference that can be drawn from the record.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000)). In addition, "at the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder." *Anderson v. Warden of Berks County Prison*, 602 F. App'x 892, 895 (3d Cir. 2015) (quoting *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1993) (internal quotation marks omitted)).

The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp.*, 600 F. App'x 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248. When a genuine issue of material fact exists, summary judgment is inappropriate. *See Santini v. Fuentes,* 795 F.3d 410, 420 (3d Cir. 2015) (citations omitted).

"Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable

classes of cases for summary judgment." *Flagstar Bank, FSB v. Lyles*, 2017 WL 987448, at *3 (D.V.I. March 14, 2017) (internal quotation marks and citations omitted). To succeed on a debt and foreclosure action, the plaintiff must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Id.* (internal quotation marks and citations omitted); *see also Anthony v. FirstBank Virgin Islands,* 2013 WL 211707, at *5, 58 V.I. 224 (V.I. 2013) (quoting *Thompson v. Florida Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009)); Am. Jur. 2d Mortgages § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

## III.   ANALYSIS

### A.  Reformation of the Mortgage

Section 155 of the Restatement (Second) of Contracts, entitled "When mistake of both parties as to written expression justifies reformation," provides:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Restatement (Second) of Contracts § 155 (1981). As stated in *Bennington Foods, LLC*, "[a] court may reform a contract where clear and convincing evidence shows that, because of mutual mistake by all parties, the contract does not accurately reflect the agreement that the parties intended it should." 2010 WL 1608483, at *5 (citing, *inter alia*, § 155). Reformation constitutes equitable relief and it is therefore a matter for the court to decide. *Id.*

In conducting a *Banks* analysis, this Court finds that the three prongs are met and therefore § 155 should apply in the Virgin Islands. As to the first *Banks* prong—which common law rule have Virgin Islands courts applied in the past—both federal and local courts have applied § 155.

In *Bennington Foods,* the District Court applied § 155 at trial to reform a contract. *Bennington Foods, LLC,* 2010 WL 1608483, at *4-6 (allowing reformation; opinion concerned jury instructions regarding scope of reformed contract). In *Whitfield,* 24 V.I. at 161-65, 1989 WL 1739517, at *5-10, the then Territorial Court also applied § 155 to reform a contract due to mutual mistake of both parties.

Based on this negligible pre-*Banks* case law—*Bennington Foods* and *Whitfield*—Virgin Islands courts have previously applied the common law rule set forth in § 155.[4]

With regard to the second *Banks* prong—identifying the rule of law adopted by the majority of courts of other jurisdictions—the Court has reviewed Restatement § 155, which lists thirty-one state jurisdictions where courts have adjudicated reformation of contract issues based on the alleged mutual mistake of the parties. *See* Restatement (Second) of Contracts § 155, Case Citations by Jurisdiction. Moreover, the Tiffany Real Property treatise indicates that reformation is appropriate concerning real property contracts. *See, e.g.,* 4 Tiffany Real Prop. § 985 (3d ed.) ("If the parties are in agreement as to what they wish and intend to do, but there is a mistake in the preparation of the instrument, so that it fails correctly to embody their intention, equity will reform or rectify the instrument accordingly[.]") (citing cases from twenty-one jurisdictions); *see also* 55 Am. Jur. 2d Mortgages § 771 (2016) (observing that "in accordance with the general principles governing the reformation of instruments, the purchaser of land under a foreclosure sale may have mistakes in his or her deed or other title papers or in the mortgage itself corrected. . . . [W]here land is foreclosed under a power of sale rather than by decree, the court may reform the mortgage and subsequent instruments of title to correct an error by which the identification of a portion of the land has been omitted from the description.") (citing cases). From these sources, the Court

---

[4] Prior to the ruling by the Supreme Court of the Virgin Islands in Banks, the Restatement was, by statute, the law in the Virgin Islands. *See* 1 V.I.C. § 4.

14

concludes that a majority of jurisdictions permit reformation of contracts in the context of mutual mistake.

With regard to the third *Banks* prong—determining which common law rule is the soundest for the Virgin Islands—the Court finds that joining the majority of jurisdictions which permit reformation of mortgages based on mutual mistake should be adopted in the Virgin Islands. Such an equitable remedy will permit land to be alienated where mutual mistake has occurred in the title documents in that the improperly formulated document did not embody the intentions of the parties. This remedy could not be used extravagantly, as it must be proved by clear and convincing evidence. *Bennington Foods,* 2010 WL 1608483, at *5. It would rectify a situation where the clear intentions of the parties were not incorporated in the writing(s).

Accordingly, the Court finds that, pursuant to a *Banks* analysis, the reformation of contracts based on mutual mistake, as set forth in Section 155 of the Restatement (Second) of Contracts, should be adopted as the law in the Virgin Islands, and will be applied accordingly in the instant matter.

### B.  Whether the 2010 Mortgage Should Be Reformed

The salient question is whether clear and convincing evidence shows that the Powers and Central Mortgage's predecessor intended the 2010 Mortgage to encumber both Plots 54 and 55 of Estate Hermon Hill, and that by referring to only 55 Hermon Hill in the 2010 Mortgage the parties made a mutual mistake. This analysis is made more challenging because the Powers have defaulted, and thus there is no current articulation by them of their intent. As a result, the only information available to the Court to make its assessment as to whether a mutual mistake occurred is that reflected in loan documents surrounding the 2010 Mortgage which have been provided by Central Mortgage, together with Central Mortgage's argument. The Court undertakes its analysis based on that record.

As recounted above, the 2007 Warranty Deed conveyed 54 and 55 Hermon Hill to the Powers. (Dkt. No. 32-1). There is no question that they owned both pieces of property.

In providing numerous documents associated with the 2010 Note and Mortgage, Central Mortgage points to certain exhibits attached to its Motion for Summary and Default Judgment, and argues that those documents list both plots but identify 55 Hermon Hill as the property address. Plaintiff appears to be arguing that while the property address is known as 55 Hermon Hill, it actually includes both 54 and 55 Hermon Hill.

The March 2010 appraisal—associated with the Mortgage at issue—supports Central Mortgage's position. The appraisal indicates that the address of the property being appraised was 55 Hermon Hill, but the legal description of that appraised property includes both 54 and 55 Hermon Hill. (Dkt. No. 32-11 at 10). Together, these plots were appraised at $830,000 and totaled 1.807 acres (1.0273 acre for Plot 54 and 0.7797 acre for Plot 55). (*Id.*) Thus, the appraisal unmistakably demonstrates that the value of the property appraised, upon which the 2010 mortgage was based, was $830,000, and included both Plots 54 and 55 Hermon Hill.

In addition, the March 2010 Uniform Residential Loan Application for the loan at issue, which bears the Powers' signatures, indicates that the property address for the loan was 55 Estate Hermon Hill, and that the value of that property was $830,000. Thus, the Loan Application adopted the $830,000 figure from the appraisal which, in turn, clearly indicated that $830,000 represented the value of both Plots 54 and 55 Hermon Hill, notwithstanding that the property address on the appraisal was cited as 55 Hermon Hill. (Dkt. No. 32-16).

Further, the SBA Mortgage, entered into by the Powers and SBA in 2009, unequivocally indicates that both 54 and 55 Hermon Hill were being encumbered, and included the property description of both plots. The SBA Mortgage stated that the property, including both Plots 54 and 55, was "more commonly known as 55 Hermon Hill." (Dkt. No. 32-8). Prior to the Powers'

$590,000 Mortgage being consummated in 2010, the SBA signed a "Subordination of Mortgage" Agreement wherein it agreed to subordinate its Mortgage to the 2010 Mortgage because, according to the SBA, "the total value of the land and improvements at $830,000.00 is sufficient to protect the interest of the U.S. Government as the holder of a Second Priority Mortgage thereon." (Dkt. No. 32-10). In other words, the $830,000 value of the property—which represented the value of both 54 and 55 Hermon Hill—exceeded the $590,000.00 amount of the 2010 Mortgage, thus protecting the Government's interests and allowing it to subordinate its mortgage without a risk.

Assessing these documents together, the Court concludes that they "clearly and convincingly" make a case that the parties intended to encumber both 54 and 55 Hermon Hill with the 2010 Mortgage.[5] The appraisal provided that the value of 54 and 55 Hermon Hill was $830,000, although the property's address was cited as 55 Hermon Hill. The Powers filled out the Loan Application, seeking a $590,000 loan—again, with an address of 55 Hermon Hill, but linked to and incorporating an appraisal of both 54 and 55 Hermon Hill.[6] Finally, the SBA Mortgage which explicitly covered 54 and 55 Hermon Hill noted that the property was "more commonly known as 55 Hermon Hill." (Dkt. No. 32-8). The subsequent SBA Subordination of Mortgage again referred to the value of the mortgaged property as $830,000 which, pursuant to the appraisal, represented the value of 54 and 55 Hermon Hill together. (Ex. 32-10).

---

[5] The Title Insurance Policy does not alter the Court's conclusion. The Court does not find it surprising that the Title Insurance Policy would have followed the text of the 2010 Mortgage in citing to 55 Hermon Hill. (Dkt. No. 32-13).

[6] The Court deems it implausible that the Powers would have sought a $590,000 loan, and that the mortgage company would have agreed to underwrite such a loan, if the property at issue serving as security for the loan was not an equivalent or greater value than the sum being sought.

17

Accordingly, the Court finds that Central Mortgage has proven by clear and convincing evidence that the 2010 Mortgage was intended to encumber both 54 and 55 Hermon Hill. The 2010 Mortgage and subsequent Assignment will be reformed to reflect that understanding of the parties.

### C.  Default Judgment against the Powers

Central Mortgage has satisfied the requirements necessary to obtain a default judgment against the Powers regarding 54 and 55 Hermon Hill. It has shown that the Powers were properly served with the Summons and Complaint (Dkt. Nos. 7, 8); they have not appeared; and default was entered against them by the Clerk of Court (Dkt. No. 15). Further, in her Declaration, Plaintiff's then attorney, Johanna Harrington, Esq., averred that, based on their dates of birth, Michael Christopher Powers a/k/a Michael C. Powers, Christie A. Powers a/k/a Christie Powers are adults over the age of eighteen, and that "upon information and belief," the Powers are competent "in that they are both employed and previously owned and operated their own business." (Dkt. No. 32-20 at 2); *see FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that bank attorney's affidavit stating in good faith that defendant was a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment).

Central Mortgage has also shown with specificity how it calculated the amount due. (Dkt. No. 32-5).

In addition, Central Mortgage provided copies of Status Reports from the Department of Defense Manpower Data Center showing that both Michael Powers and Christie Powers are not active members of the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. Nos. 32-18, 32-19).

The Court has considered the *Chamberlain* factors and finds that the prejudice to Central Mortgage resulting from the Powers' breach of their contractual obligations, and the apparent

absence of a litigable defense for the Powers weigh in favor of the Court granting default judgment. Furthermore, the Powers' default is a result of their culpable conduct as evidenced by their failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

Accordingly, the Court will grant Central Mortgage's Motion for Default Judgment against the Powers.

### D. Summary Judgment against the SBA and Priority of Liens

SBA, which was named as a Defendant in this lawsuit because it has a lien on the same Property as Central Mortgage, stated that it did not oppose Central Mortgage's Motion for Summary Judgment or challenge any fact for which Plaintiff alleged there was no genuine dispute. (Dkt. No. 33). It acknowledged that it was a junior lienholder in this action by virtue of the Subordination Agreement it executed on February 4, 2010 in favor of Central Mortgage's predecessor-in-interest. (*Id.*) Given that the Court has granted Central Mortgage's request for reformation of the Mortgage, it will grant Central Mortgage's Motion for Summary Judgment against the SBA. The Court finds that Central Mortgage has a first priority lien, and SBA has a second priority lien on the property—54 and 55 Hermon Hill.

SBA has also requested that the Judgment include language that authorizes disbursement of any surplus remaining after the application of the proceeds of sale to costs, expenses, and Central Mortgage's debt, to any junior lienholder as authorized by 28 V.I.C. § 533. (Dkt. No. 33 at 2).[7]

---

[7] 28 V.I.C. § 533 provides: "When it is adjudged that any of the defendants have a lien upon the property, the court shall make a like judgment in relation thereto and the debt secured thereby as

The Court finds that SBA's outstanding indebtedness on its Mortgage is $13,182.34 as of January 12, 2016, with interest accruing at $1.38 per diem until the date of judgment, and interest at the federal statutory rate thereafter.

## IV.    CONCLUSION

The Court agrees with Central Mortgage that, following the three-part analysis set forth in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011), reformation of a mortgage based on mutual mistake, applies in the Virgin Islands as set forth in the Restatement (Second) of Contracts § 155. The Court also finds that the evidence is clear and convincing that the parties—Central Mortgage's predecessor-in-interest and the Powers—committed a mutual mistake and intended that the 2010 Mortgage encumber both 54 and 55 Hermon Hill. The Court finds that Central Mortgage's 2010 Mortgage encumbers both 54 and 55 Hermon Hill, and will grant Central Mortgage's request to reform the 2010 Mortgage and September 2013 Assignment to reflect the parties' understanding that the 2010 Mortgage encumbers both 54 and 55 Hermon Hill.

Central Mortgage has satisfied the requirements necessary for a default judgment against Defendants Michael Christopher Powers a/k/a Michael C. Powers, Christie A. Powers a/k/a Christie Powers as to 54 and 55 Hermon Hill. The Court will therefore grant its Motion for Default Judgment against the Powers as to 54 and 55 Hermon Hill.

Central Mortgage has also satisfied the requirements necessary for summary judgment against Defendant SBA. The Court finds that Central Mortgage has a first priority lien on 54 and 55 Hermon Hill, and SBA has a second priority lien on 54 and 55 Hermon Hill.

---

if such defendant were a plaintiff in the action. When a judgment is given foreclosing two or more liens upon the same property or any portion thereof in favor of different persons not united in interest such judgment shall determine and specify the order of time, according to their priority, in which the debts secured by such lien shall be satisfied out of the proceeds of the sale of the property."

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: March 30, 2017                          _____/s/_____
                                             WILMA A. LEWIS
                                             Chief Judge